# EXHIBIT 1

18vegrec

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
ELLIOT GREENBERG, individually
and on behalf of all others
similarly situated, et al.,

                 Plaintiffs,

          v.                          11 CV 3616(RJS)

YONGYE INTERNATIONAL, INC.,
et al.,

                 Defendants.
------------------------------x
TIMOTHY BUTLER, individually and
on behalf of all others similarly
situated,

                 Plaintiffs,
          v.                          11 CV 3799(RJS)

YONGYE INTERNATIONAL, INC.,
et al.,
                 Defendants,
------------------------------x

                                      August 31, 2011
                                      11:12 a.m.

Before:

                    HON. RICHARD J. SULLIVAN,

                                      District Judge


                         APPEARANCES


ROBBINS GELLER RUDMAN & DOWD, LLP
     Attorneys for Movants Patricia and Merton Horne, Scott
     Whitehead and Plaintiff Elliot Greenberg
BY:  DAVID AVI ROSENFELD

LAW OFFICES OF CURTIS V. TRINKO, LLP
     Attorneys for Plaintiff Greenberg
BY:  CURTIS V. TRINKO

Exhibit 1
001

18vegrec

A P P E A R A N C E S (Continued)

THE ROSEN LAW FIRM
     Attorneys for Plaintiff Butler and Movant Universal
     Invest Quality Growth
BY:  PHILLIP C. KIM

SIMPSON THACHER & BARTLETT, LLP
     Attorneys for Defendants
BY:  BRUCE ANGIOLILLO
     CRAIG WALDMAN

Exhibit 1
002

18vegrec

(In open court)

THE DEPUTY CLERK:  Greenberg, et al. versus Yongye International, 11 Civ. 3616, and Butler, et al v. Yongye International, 11 Civ. 3799.

Appearing for the plaintiffs?

MR. ROSENFELD:  Good morning, your honor --

THE COURT:  I guess it's only plaintiffs.  Do I have any defendants today?  Oh, we do.  But this is really more of an intramural dispute.

Okay.  Go ahead.

MR. ROSENFELD:  Correct, your Honor.

Good morning, your honor.  David Rosenfeld from Robbins Geller on behalf of Merton and Patricia Horne and Scott Whitehead and plaintiff Elliot Greenberg.

THE COURT:  Okay.  Great.  Good morning.

MR. TRINKO:  Curtis Trinko on behalf of plaintiff Elliot Greenberg.

THE COURT:  Okay, Mr. Trinko.  Good morning.

MR. KIM:  Good morning, your honor.  Philip Kim of The Rosen Law Firm for movant Universal Invest Quality Growth and also plaintiff Butler.

THE COURT:  Good morning to you.

And I guess for the defendants?

MR. ANGIOLILLO:  Good morning, your honor.  Bruce Angiolillo and my colleague Craig Waldman with Simpson Thacher

Exhibit 1
003

18vegrec

for the corporate defendant Yongye.

THE COURT:  But you don't expect to do a lot of heavy lifting today?

MR. ANGIOLILLO:  No, your Honor.

THE COURT:  You should bill half your usual.

All right.  We're really here with respect to the plaintiffs' motions to be appointed lead counsel.  I've got motions by two plaintiffs, or sets of plaintiffs, the Horne group and Universal Invest -- well, what I'll just call Universal.  And I guess the issue is whether or not Universal, which has the greater economic loss, ought to be, nevertheless, bypassed because somebody else would be a more appropriate lead counsel.

So I've looked at this.  It seems to me that there's certainly a stark difference between the economic losses associated with each group, right?  We have the Horne group, which is economic losses of about 12 grand, and Universal group, which is economic losses of about 350,000, right?

MR. ROSENFELD:  That's correct.

MR. KIM:  That's correct, your Honor.

THE COURT:  So there's no dispute about that.

So the issue is whether or not -- well, I guess there's a couple points that the Horne group makes here, one of which is that Universal has failed to submit a proper certification in connection with the motion, right?  Universal

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
004

18vegrec

failed to note in its certification that only one month prior to seeking appointment as lead plaintiff in the case, it sought to be appointed as lead plaintiff in another securities class action, Gross v. Deer Consumer Products, filed in California. So I'm not sure I'm following the significance to that.

MR. ROSENFELD:  Your Honor, I can address each issue one at a time or I can address each issue --

THE COURT:  Let's do them one at a time.

So that's the first argument you make, right?

MR. ROSENFELD:  That's correct, your Honor.  And as your Honor recognizes, this case is governed by the Private Securities Litigation Reform Act that provides that any plaintiff seeking to act in a representative capacity file a certification or attach it to the complaint.  But courts have interpreted that to mean they be included in the lead plaintiff motion so that other members of the class can see what their financial interest is and whether or not they're otherwise adequate and typical.

So with regard to the certification, what they have done is one of the requirements of the certification is that a movant set forth all cases within the prior three years that they sought to be appointed as a lead plaintiff.  And the purpose of that, your Honor, is to avoid, number one, professional plaintiffs, and number two is that any investor seeking to be appointed lead plaintiff is able to establish

Exhibit 1
005

18vegrec

that he's able to manage his current caseload. In other words, if he's serving as a lead plaintiff in another case, that's not burdensome enough that he can certainly acknowledge that in his certification and represent that to the Court.

So what they've done here is they failed to note that in that certification. And in that reply, what they said is, well, the reason they didn't note it in the certification is because the certification they signed in this case and the certification they signed in the other case were signed on the same date, on May 27, 2011. And, therefore, they chose not to note either one in each certification, since they didn't file the motions at that time, they only filed them later.

But, your Honor, the PSLRA explicitly says you need to note what those cases are. And essentially what they're doing is an end run around the PSLRA.

THE COURT: For what purpose, some ulterior motive here?

MR. ROSENFELD: Sloppiness.

THE COURT: Your point is they haven't lived up to the letter of the PSLRA so, I should then punish them for it, even though there's no prejudice that would flow from that?

MR. ROSENFELD: There's no prejudice other than the fact that it shows that either they're not aware they're serving as a lead plaintiff in the other case, that they don't understand what that means. They're a foreign entity here.

Exhibit 1
006

18vegrec

THE COURT:  This firm does this, does these kinds of cases, right?

MR. ROSENFELD:  Which firm, Universal Invest -- or The Rosen Law Firm?

THE COURT:  No, the Rosen law firm.

MR. ROSENFELD:  Correct.  They practice in this area, that is true, but they're not the client.

THE COURT:  I know they're not the client, but is the suggestion that they were oblivious to what their client was doing?

MR. ROSENFELD:  Well --

THE COURT:  I'll let them speak for themselves.

MR. ROSENFELD:  With all due respect to The Rosen Law Firm, they are a small law firm, filed lots of cases, issued numerous press releases in cases they're not involved in, trying to get Rosen cases.  We think they may be overextended, and that can contribute to --

THE COURT:  All right.  But they've got the bigger dog in this case, right?  I've seen your dogs in other cases, Mr. Rosenfeld.  You've got some big dogs in other cases, but this one, these are little yappy dogs.  These are not big dogs.

MR. ROSENFELD:  I don't dispute that our numbers are not great as Universal Invest's, but I'll get to whether the --

THE COURT:  The first point is that the certifications leave something to be desired, and, in fact, they're

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
007

18vegrec

technically deficient.

MR. ROSENFELD:  And one other thing worth noting is that our complaint was filed on May 26th, 2011.  And in that complaint we allege a class period starting in August 2010.

Universal Invest signs a certification the next day, and that's the one they submitted in connection with their motion.  And they list trades going back to April of 2010 saying they reviewed the complaint, and here are our trades during the class period.

Now, there was a later complaint filed extending the class period, but at the time they filed the certification -- and, again, I'm not saying that you should disqualify them on this basis alone, but this just adds color to what their motion is and their understanding of what they're reviewing here and what they're seeking to be in this case, which is a lead plaintiff to represent the interests of the class, which requires them to review pleadings and ensure accuracy if things are being filed with the Court.

So here you have a certification which lists trades that are beyond the scope of the complaint on file at that point in time.  So, again, they're signing documents, making representations to the Court that are not necessarily accurate. Yes, they did file it that day, but at that point in time it was not an accurate document, neither on the trades that were listed because of the class period and nor because of the fact

Exhibit 1
008

18vegrec

that they did not list that they were seeking to be appointed lead plaintiff in another case.

THE COURT: Okay. All right. Let me hear -- I'm not sure who's carrying the ball.

MR. KIM: Your Honor, Phillip Kim here.

In response to these arguments, it's not proof of any inadequacy with respect to our client. The certifications are dated the same day, in this case and in Deer, because Universal Invest is a client of ours. We filed the case in Deer. We are appointed lead counsel in a number of these Chinese cases. In fact, we have a Chinese attorney on staff who's been trained and educated in China. And Universal Invest purchased these stocks, learned of the lawsuit and signed up with us.

The fact that in Deer and in this case the certifications are both dated May 27th, as we noted in our papers, we were not sure whether Universal Invest would have the largest loss. Certainly if other clients had reached out to us that had a larger loss, we would have advised that to our client and said, hey, look, there's another client here with a larger loss. So the fact that the certification doesn't list each case at that point in time, there were no lead plaintiff deadlines, and we addressed that in the footnote in our reply brief.

THE COURT: All right. I mean, do you think the better practice, though, is to amend your certification, or

Exhibit 1
009

18vegrec

would that be too onerous?

MR. KIM:  We could amend the certification.  We don't have a problem with that.  It's not a secret that our client moved for lead plaintiff in Deer and is lead plaintiff.  We set that forth in our reply.

As to the purpose of disclosing involvement in other cases, professional plaintiff restriction, courts in this district had said it doesn't even apply to institutions.  This is a sophisticated institution that manages many millions of dollars.  And to suggest that it did not know what it was getting into or didn't know that what it was -- didn't know what the certification was signing, especially in light of the fact that we submitted the declaration of Mr. De Sejournet establishing his authority or the fund's authority and establishing his awareness of what he's doing, there's no proof of it.

If we want to talk about certifications we could look at the certification of one of the Hornes.  As we noted in our opposition, it's inaccurate.  They never corrected it.  They have a certification of a member of their group, it's an electronic certification, and there's no information other than the person's name.  So, you know, we could do this back and forth.

But the bottom line, your Honor, is that there's no proof, and that's the standard.  There's no proof establishing

Exhibit 1
010

18vegrec

that in any way our client is inadequate or atypical.  These are just aspersions that are cast to create a distraction.

THE COURT:  I'm not persuaded that's a basis to overlook the fact that the Universal plaintiff has a much higher stake in this thing.

So the next argument made is that Universal certification was executed by an individual associate with its investment advisor who lacks standing to bring a securities fraud action.  So, Mr. Rosenfeld, let me make sure I understand what you're saying here.  Are you still suggesting that, or are you --

MR. ROSENFELD:  Absolutely, your Honor.  And not only that, but what they've now submitted in reply only further supports our argument.  Your Honor, it requires a careful reading of the declaration as well as a careful reading of the case, *Hufnagel v. Rino International Corporation*, which was cited in the briefs.  If your Honor has a copy of that handy, I could just reference it.

THE COURT:  I was going to go to first the declaration.

MR. ROSENFELD:  Sure.  It's helpful to have them side by side.

THE COURT:  The certification you're talking about?

MR. ROSENFELD:  No.  I'm talking about the De Sejournet declaration filed on August 24th.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
011

18vegrec

THE COURT:  Sorry.  Lot of tabs.

MR. ROSENFELD:  Sorry, your Honor.  It's a WestLaw case, if that helps.

THE COURT:  All right.  You're talking about the declaration, or are you talking about the --

MR. ROSENFELD:  I'm sorry.  Both.  I'm sorry.  The declaration is a document filed on August 24, 2011.  It's document 22-1 on the docket.  I don't know how your Honor has it organized.

THE COURT:  Yes.

MR. ROSENFELD:  It was attached to a reply brief.

THE COURT:  Attachment to Mr. Kim's declaration.  Yes, all right.  That's where I'm looking.

MR. ROSENFELD:  That's one.  And the other document I'd like to reference is the *Hufnagel v. Rino International* case.

THE COURT:  So let's start with the declaration because I've got it in front of me.

MR. ROSENFELD:  So, your Honor, actually, one more document I'd like to reference, your Honor.  I apologize.  And that is the certification that was filed in connection with the motion which was attached to Mr. Kim's declaration on July 25.

THE COURT:  Okay.  Well, let's start with the 22-1.

MR. ROSENFELD:  Okay.  So in 22-1, if we can -- first off, just to note for the record, this is a motion being filed

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
012

18vegrec

on behalf of Universal Invest Quality Growth seeking to be appointed as lead plaintiff.  And who signs that certification, which is document 5-3?  It's a gentleman by the name of Antoine De Sejournet.  He signs it in capacity --

THE COURT:  Does the court reporter have the spelling of that name?  Usual spelling.

MR. ROSENFELD:  A-N-T-O-I-N-E, D-E, S-E-J-O-U-R-N-E-T.

THE COURT:  Okay.  Go ahead.  I got it.

MR. ROSENFELD:  Initially he lists himself as being a manager of Universal Invest Quality Growth, but it turns out he's not.  And that's what he says in his declaration.

And if you look at the declaration, which is 22-1, he says in paragraph two, I'm on the board of directors of Capfi Delen Asset Management, which he defines as CaDelAM.  So he's not the manager.

THE COURT:  He's the manager?

MR. ROSENFELD:  CaDelAM is the manager.  But even if you want to say he was signing that in the capacity of CaDelAM, the next paragraph is what's troubling, your Honor, where he says, I am duly authorized by CaDelAM and its board -- emphasis on the word "its" -- to bring this litigation and to bind the fund in this litigation.

Now, as your Honor will note in paragraph five, he makes it clear when he says, the fund is managed by me through CaDelAM, along with the fund's board of directors.  So the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
013

18vegrec

fund, which is the entity seeking to be appointed as lead plaintiff in this case, has its own board of directors. That is an issue in dispute. It says it right there in paragraph five. It has its own board of directors which manages the fund, and yet the authority that Mr. De Sejournet represents that he has is not from the board of directors of the fund but from CaDelAM and its board. And again, I'm referencing paragraph three.

THE COURT: Yes.

MR. ROSENFELD: So here you have an entity seeking to be a lead plaintiff, appointed lead plaintiff by a guy who signed the certification saying he has authority from a third party. It's no different than someone filing a motion to be appointed lead plaintiff by me and signing the certification as Jim Smith. Your Honor would come and say, what's your authority to bind David Rosenfeld if your name is Jim Smith? And you would need evidence of your authority to show that you have authorization to seek appointment as lead plaintiff on behalf of David Rosenfeld or on behalf of Universal Invest.

I mean, to come sand say that you have authority to bind me because Frank Smith told you that I'm authorized is of no moment. You cannot do that, your Honor. You need to show that you have authority from the entity that is seeking to be appointed as lead plaintiff. And here you have Mr. De Sejournet, who's saying that CaDelAM is authorizing me

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
014

18vegrec

to seek appointment as lead plaintiff for Universal Invest, another entity that has its own board of directors.

THE COURT:  Right.  Okay.  I want to hear Mr. Kim respond to this but is there another point you wanted to make?

MR. ROSENFELD:  There is, your Honor, and that is the *Rino* case in which Mr. Kim is serving as lead counsel and which he heavily relies on to show that an entity such as Universal Invest should be appointed as lead plaintiff.  If your Honor has a copy of that handy?

THE COURT:  I don't know that I do.

MR. ROSENFELD:  I can reference it.  It's at star six, and it's 2011 WestLaw 710704.  I apologize I don't have an extra copy with me.

THE COURT:  2011 WestLaw.

MR. ROSENFELD:  710704 at star six.

And this, your Honor, is a case in which an entity similar to Universal Invest, it's called a SICAV -- one second, your Honor.  Sorry, SICAV, S-I-C-A-V, that's a type of entity that this is.  And this is another case in which Mr. Kim represents a SICAV in which the Court appointed them as lead plaintiff.  And in the opinion, the reason the Court appoints them is there's explicit representation by the individual who signed the certification there that says that he is, quote, duly authorized by the fund's management and board of directors to bring this litigation  --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
015

18vegrec

THE COURT: All right, I understand. What you're saying is that this declaration should have had a paragraph that says the fund has -- the fund and its board of directors has authorized me to bring this suit on their behalf. That's what you're saying?

MR. ROSENFELD: Well, not only should it have it. They should have actually received that authority.

And another point, your Honor, is that this may involve an extensive analysis of foreign law to determine whether or not that authority was proper and whether or not that authority was timely.

THE COURT: Well, I think that's really the next point that I have you taking up.

MR. ROSENFELD: That's one of the issues --

THE COURT: Res judica defenses that are unique to a Luxembourg entity, right?

MR. ROSENFELD: Right. And, your Honor, that's one of the issues that Judge Pauley was concerned about in the Bagdel v. American Express case. He says there's just too many issues involved for this foreign entity, and he was reluctant to appoint the investor in that case as a lead plaintiff.

THE COURT: All right. Let me have Mr. Kim respond to the deficiencies or what you allege are the deficiencies in the declaration of Mr. De Sejournet, whatever his name.

MR. KIM: Well, your Honor, with respect, the argument

Exhibit 1
016

18vegrec

here, as I hear it, is not necessarily a Huff issue.  A Huff issue would have been if the manager himself was trying to be lead plaintiff for the losses of the fund, and that was the issue in Huff, where an investment advisor didn't have standing to be a lead plaintiff.  I think the argument I'm hearing today is that Mr. De Sejournet did not have authority to bind the fund.

THE COURT:  I think it's the same technical deficiency in the declaration at least, because it doesn't -- there's no link between the named plaintiff and the individual who is filing the certification and the declaration.

MR. KIM:  Judge, we believe the declaration is adequate and certainly -- could it have been drafted a little bit better?  Certainly, yes.  And we can submit something better, if that's what the Court wants, that says directly that he's authorized by the fund.  But Mr. De Sejournet manages the fund.  He's the one who made the investment decision.  I understand officially it's CaDelAM that's managing the fund, but he's the person behind the entity.

THE COURT:  That's paragraph five.

MR. TRINKO:  Yes, exactly.  He made the investment decision, and the fund itself is controlled by the fund's board of directors and the management.  So there's nothing from this declaration, or even from assertion, that would suggest that Mr. De Sejournet does not have the authority to bind the fund.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
017

18vegrec

There's got to be proof.  We can sit here and --

THE COURT:  There's nothing to suggest he does have the authority either, right?  You want to read between the lines and indicate that because he's managing the fund, he must have the authority to bind them?  But certainly the declaration doesn't say that.

MR. KIM:  It doesn't explicitly say that.  Certainly we could submit something to the Court very quickly to remedy that situation.  Certainly he had authority from the beginning. We wouldn't have made the motion if he didn't have the authority.

It could have been drafted better, your Honor.  I apologize for that.

THE COURT:  My take on this is that it's easily fixed. It's of a technical deficiency and could have been written better, but why wouldn't the way to resolve this, Mr. Rosenfeld, just be to have Mr. De Sejournet supplement his declaration so it's clear?

MR. ROSENFELD:  Your Honor, I'm not sure why -- based on representations made here, and based on the similar representations yet different representations in the declaration that they filed in the Hufnagel case, the same counselor prepared the same declaration.  Clearly there must have been a difference as to why they chose certain language in one instance and other language in another instance.

Exhibit 1
018

18vegrec

THE COURT:  Maybe.

MR. ROSENFELD:  The question goes to whether or not he has authority.

THE COURT:  Well, if Mr. Kim submits what ends up being a false declaration, then Mr. Kim will really regret it. And so if it's impossible for Mr. De Sejournet to supplement his declaration in a way that would cover the deficiency that you've identified, then I guess there's a problem.  But Mr. Kim is representing that it's just an oversight and it's easily corrected.  And it seems to me I can let him easily correct it. That seems to me to be more in keeping with the spirit of the law than to say, technical deficiency, toss you and go with the $12,000 plaintiff, it seems to me.

MR. ROSENFELD:  Your Honor, in all fairness, there are numerous oversights in connection with this motion.  And that goes to the argument in our brief that the firm is overextended in its ability to handle these cases and whether or not the client fully appreciates what's going on and can oversee counsel, because that's what a lead plaintiff does.  A lead plaintiff's role is simple:  Oversee your counsel.

THE COURT:  But I don't think there's great authority for the proposition that an inartfully phrased declaration or the deficiencies of the sort that you're identifying is enough to bounce somebody who has unmistakably a much larger stake in the case.

Exhibit 1
019

18vegrec

So anyway, I'm not prepared to do that based on what I've heard so far. So I'll direct Mr. Kim to submit a revised declaration or supplemental declaration for Mr. De Sejournet by -- can you do it by Friday, by Monday?

MR. KIM: Your Honor, can I have ten days? Mr. De Sejournet is on vacation abroad, so it might be difficult reaching him if he's travelling.

THE COURT: All right. But find him. It's pretty simple. I'll give you ten days.

MR. ROSENFELD: Your Honor, can we just have two days to respond, if necessary, if we think there's anything in there?

THE COURT: Sure. I'll set a schedule when we're done, but that's the way I'm inclined to go.

The next point is that Luxembourg -- my God, you can't do business with anybody who's from Luxembourg. It's a jungle out there. And I know you cite the Bagdel v. American Express. That's the Judge Pauley case?

MR. ROSENFELD: Correct, your Honor.

THE COURT: And that case I think -- well, you guys indicate that there's no evidence that Luxembourgian courts would give res judicata effect to a judgment in this case. I mean, is that a burden that they have to do at this point? They have to establish -- they have to sort of run down and extinguish any possible arguments that could be made with

Exhibit 1
020

18vegrec

respect to foreign law and the application of foreign law?

MR. ROSENFELD:  Well, your Honor, this is not a unique argument.  This is something that has been considered by a number of judges and found to be sufficient reason to not appoint them as lead plaintiff.

THE COURT:  But, I mean, there's plenty of foreign plaintiffs who are, in fact, appointed as lead counsel.

MR. ROSENFELD:  Absolutely.  There are plenty of foreign plaintiffs.  We represent foreign plaintiffs.

THE COURT:  Yes.

MR. ROSENFELD:  But that's not the issue.  The issue is if you're in a country that is not -- certain countries have relationships with the United States such that they give full effect and credit to judgments in the United States.  And there's no concern about any ability to obtain a res judicata of any judgment entered against an entity here.

THE COURT:  Other than this case involving Judge Pauley, are you familiar with other cases in which courts have denied lead plaintiff status to such a Luxembourgian company or sort of announced a broad rule that anybody who's from Luxembourg can't be a lead plaintiff?

MR. ROSENFELD:  I'm not familiar with Luxembourg in particular, but I am familiar with some German entities that sought to be appointed lead plaintiff that have been denied lead plaintiff in this courthouse.  I think it was Judge

Exhibit 1
021

18vegrec

Stanton, Kuriakose case. I'll submit it to your Honor.

THE COURT: I can find it.

MR. ROSENFELD: I believe that's the case.

THE COURT: I mean, the response, and I'm going to hear Mr. Kim in a moment, is that these are all shares that purchased through a US stock exchange. Is that irrelevant in your --

MR. ROSENFELD: You know, your Honor, I have to be frank. I see some courts have made that distinction, but I don't see why that's a distinction with a difference. Why should that be relevant to whether or not a foreign entity, a foreign company -- a foreign country, sorry, is going to give res judicata effect to a judgment in the United States? We are a company -- where an entity purchased its share should have no consideration in that analysis.

THE COURT: All right. Well, I mean, you've got Judge Pauley who voiced his concerns, and I guess they have their own judges in this district which sort of cancel each other out. Nobody gets to tell me what to do. If the circuit weighed in, then that would be the end of it, but there's no circuit authority that you've cited, right?

MR. ROSENFELD: Not that I'm aware of, correct.

THE COURT: Mr. Kim?

MR. KIM: Your Honor, we --

THE COURT: I'd be interested to know in these

Exhibit 1
022

18vegrec

difficult economic times, shouldn't we just be reserving these coveted positions to American corporations in American entities? Isn't that the patriotic thing to do?

MR. KIM: They had a larger loss than our client. But you know, we cite cases from Judge Buchwald, recent case, Transocean case of 2011, case that's at issue, Judge Scheindlin. So there are cases on both sides of the issue. We don't think it's an issue in Hufnagel. Again, Luxembourg entity was appointed lead counsel and lead plaintiff.

In Deer, this client, Universal investors appointed lead plaintiff. That was a contested motion at the opposition stage. The competing movant withdrew their papers after the head ceded the financial loss of our client. And the issue of -- and there's a broader issue of res judicata is at this lead plaintiff stage, the competing movant has to show proof. So courts that have considered this issue have only really considered it when there was direct evidence by the competing movant showing that the proposed lead plaintiff, you know, has some unique issue, meaning through an expert declaration or something like that.

There's none of that here. Their citation is to a German case, you know, cases dealing with German entities. So, you know, the competing movant hasn't come forward with the proof that's required under the PSLRA to knock our client out.

THE COURT: Okay. I mean, I guess I think I'm

Exhibit 1
023

18vegrec

inclined to agree with Mr. Kim. He's having a good day so far. But it seems to me that I haven't seen anything to suggest that there really is a problem here. There's a little bit of language from another case involving different parties and different facts and, you know, it might be an issue, but I certainly don't think it's been demonstrated that it really is an issue that's going to knock the Universal folks out of the box or create real unique problems in this case. I don't think that's been established sufficiently for me to prevent them from being lead plaintiff.

So I'm going to deny this, subject to the submissions that we've talked about. And I'm going to -- I think Universal, seems to me, to be able to pull this off. And I think the arguments raised by Mr. Rosenfeld, for whom I have great respect because I see him all the time, I think I'm not ultimately persuaded by them, that they're enough to overcome the presumption under law.

But, Mr. Angiolillo, maybe you'd like to weigh in. Who would you rather fight against?

MR. ANGIOLILLO: Your Honor, I don't pick my adversaries. I'm just happy to be in front of your Honor again. Good to see you.

THE COURT: It's a pleasure, I'm sure, for you and pleasure for me, too. Anyway, so not a surprising response. I didn't think that you'd really have a dog in this fight.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
024

18vegrec

So that's what we'll do. But I do want to see the declaration, the supplemental declaration for Mr. De Sejournet -- is that the right pronunciation?

MR. KIM: Yes, your Honor.

THE COURT: So I'll just give you firm dates, then. Ten days from today puts us at September 10th, which is what day? That's a Saturday. What do you think, can you get it to me by the 9th, which is Friday?

MR. KIM: We'll get it to the Court as soon as possible. I think it's safe to just make it the 12th. If I can get it tomorrow --

THE COURT: Are you okay with that, Mr. Rosenfeld?

MR. ROSENFELD: That's fine.

THE COURT: 12th. I'll give you three days and set it to the 15th. September 12th and September 15th. Depending on what I see, I will either just issue a short order consistent with what I've said today making the appointment, or if there really is a problem, then maybe I'll get you back or I'll give you further instructions. Okay?

MR. ROSENFELD: Thank you very much, your Honor.

THE COURT: Anything else today?

MR. ANGIOLILLO: No, your Honor.

THE COURT: Well, thanks.

(Adjourned)

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Exhibit 1
025