UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— X

JERIES SALEH, Individually and on Behalf of :    No. 1:25-cv-04088 (VSB)
All Others Similarly Situated,                  :
                                            :    ORAL ARGUMENT REQUESTED
                     Plaintiff,       :
                                            :
         vs.                     :    **REPLY IN SUPPORT OF DEFENDANTS'**
                                            :    **MOTION TO DISMISS THE**
ASTRAZENECA PLC, PASCAL SORIOT,    :    **AMENDED COMPLAINT**
ARADHANA SARIN, WANG LEI (aka
LEON WANG), and DAVID FREDRICKSON : 
                                            :
              Defendants.     :
                                            :

——————————————————————— X

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT...............................................................................................................................2

I.      Plaintiffs Do Not Allege Any False or Misleading Statement............................................2

        A.    AstraZeneca's Disclosures Were Not Misleading ...............................................2

        B.    AstraZeneca's Accurate Tagrisso Sales Reporting Is Inactionable ...................4

        C.    The Complaint Alleges No False Statement Regarding the Investigation ......................5

II.     The Complaint Fails to Plead Materiality................................................................6

III.    The Complaint Fails to Plead a Strong Inference of Scienter.............................................8

IV.     The Complaint Fails to Plead Loss Causation .................................................................11

V.      Plaintiffs' Control Person Claims Fail .......................................................................12

CONCLUSION..........................................................................................................................12

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*In re BioScrip, Inc. Sec. Litig.*,
  95 F. Supp. 3d 711 (S.D.N.Y. 2015) ................................................................. 2

*Chen v. Missfresh Ltd.*,
  701 F. Supp. 3d 236 (S.D.N.Y. 2023) ............................................................. 3, 12

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*,
  2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ..................................................... 9

*City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014) ............................................................................. 3

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
  2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018) ..................................................... 6

*In re Draftkings Inc. Sec. Litig.*,
  650 F. Supp. 3d 120 (S.D.N.Y. 2023) ............................................................... 4

*ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ........................................................................... 7, 8

*In re Estee Lauder Co., Inc. Sec. Litig.*,
  2025 WL 965686 (S.D.N.Y. Mar. 31, 2025) ....................................................... 9

*Gimpel v. Hain Celestial Grp.*,
  156 F.4th 121 (2d Cir. 2025) ........................................................................... 10

*Gross v. AT&T Inc.*,
  2021 WL 9803956 (S.D.N.Y. Sept. 27, 2021) ..................................................... 9

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
  818 F.3d 85 (2d Cir. 2016) .............................................................................. 7

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) ............................................................................ 8

*Cheng v. Can. Goose Holdings*,
  2021 WL 3077469 (S.D.N.Y. July 19, 2021) ..................................................... 11

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  501 F. Supp. 2d 452 (S.D.N.Y. 2006) ............................................................... 10

*Meyer v. Jinkosolar Holdings Co.*,
  761 F.3d 245 (2d Cir. 2014)............................................................................. 3

*N.Y.C. Public Pension Funds v. Coupang, Inc.*,
　2025 WL 2613650 (S.D.N.Y. Sept. 10, 2025) .................................................................... 4, 10

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
　367 F. Supp. 3d 16 (S.D.N.Y. 2019) ................................................................................. 8

*Pehlivanian v. China Gerui Adv. Materials Grp., Ltd.*,
　153 F. Supp. 3d 628 (S.D.N.Y. 2015) ............................................................................... 12

*In re Philip Servs. Corp. Sec. Litig.*,
　383 F. Supp. 2d 463 (S.D.N.Y. 2004) ............................................................................... 11

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
　11 F.4th 90 (2d Cir. 2021) ................................................................................................ 4

*Press v. Quick & Reilly, Inc.*,
　218 F.3d 121 (2d Cir. 2000) ............................................................................................. 6

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
　732 F. Supp. 3d 300 (S.D.N.Y. 2024) .............................................................................. 10

*Sfiraiala v. Deutsche Bank Aktiengesellschaft*,
　729 Fed. App'x 55 (2d Cir. 2018) .................................................................................... 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　551 U.S. 308 (2007) ......................................................................................................... 8

*In re UBS AG Sec. Litig.*,
　2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ................................................................. 6

*In re Van der Moolen Holding N.V. Sec. Litig.*,
　405 F. Supp. 2d 388 (S.D.N.Y. 2005) .............................................................................. 4

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
　195 F. Supp. 3d 528 (S.D.N.Y. 2016) .............................................................................. 4

### STATUTES & RULES

15 U.S.C. § 78j .................................................................................................................... 12

## PRELIMINARY STATEMENT

Plaintiffs' Opposition tries mightily to avoid a key fact—evident in the Complaint—which undermines Plaintiffs' entire case:  AstraZeneca voluntarily disclosed Chinese authorities' investigation into Tagrisso (the "Investigation") in January 2022, months *before* the statements that Plaintiffs now challenge as misleading.[1]  Having disclosed the Investigation about an immaterial part of its business, AstraZeneca had no duty to provide continuous updates.  The Company's voluntary disclosure informs each of the four independent bases for dismissal.

*First*, the Complaint fails to plead that any of the statements at issue were materially false or misleading when made, much less with the particularity required by the PSLRA and Rule 9(b).  The Company alerted investors in January 2022 to the Investigation and provided periodic updates throughout the Class Period.  Plaintiffs cannot assert that AstraZeneca's risk disclosures were misleading for not disclosing the Investigation.  The Opposition admits that AstraZeneca's Tagrisso sales figures were accurately reported; those statements cannot, therefore, form the basis of a securities fraud claim.  As to the handful of isolated comments by individual defendants about the Investigation, the Opposition largely ignores the Motion's reasons why the Complaint fails to allege that any were misleading when made.

*Second*, the Complaint does not allege that any statements were material.  The Opposition admits that Plaintiffs cannot plead quantitative materiality; the alleged Tagrisso-related conduct implicated only 0.002% of AstraZeneca's revenue during the relevant period.  The Opposition instead asserts that the Tagrisso fraud *as a whole* was somehow "qualitatively" material.  But that assertion finds no basis in law and again ignores that AstraZeneca *did* disclose the

---

[1] Defendants' Motion to Dismiss is referred to as "Motion" or "Mot.," and Plaintiffs' Memorandum of Law opposing the Motion is referred to as "Opposition" or "Opp."  Capitalized terms not defined herein have the same meaning as in Defendants' Motion.

Investigation. The Opposition does not even attempt to explain how any of the actual *statements* could ever have been *materially* misleading—qualitatively or otherwise—given this disclosure.

*Third*, Plaintiffs fail to plead the requisite strong inference of scienter. The Opposition relies on vague and conclusory allegations that Defendants "must have known" of the Tagrisso fraud given their positions and the Chinese market's importance. Such allegations are insufficient. Moreover, AstraZeneca's decision to voluntarily disclose the Investigation publicly is wholly inconsistent with scienter.

*Finally*, Plaintiffs fail to plead loss causation. The purported "corrective" disclosures in the Complaint are no such thing—they do not reveal a previously concealed "truth" related to the at-issue statements.

## ARGUMENT

## I.    Plaintiffs Do Not Allege Any False or Misleading Statement

### A.    AstraZeneca's Disclosures Were Not Misleading

Plaintiffs concede that no aspect of AstraZeneca's disclosures was affirmatively false. Instead, they claim that AstraZeneca's risk disclosures and contingent liability statements were misleading by omission because they should have said *more* about the Investigation. This fails.

As Plaintiffs concede (Opp. 8), AstraZeneca promptly disclosed the Investigation in January 2022—soon after becoming aware of the Investigation and before the Class Period began.[2] (Ex. F.) AstraZeneca also warned investors that it was "involved in various legal proceedings" that include "actual or potential government investigations relating to ... sales and

---

[2] Plaintiffs' reliance on *In re BioScrip, Inc. Securities Litigation* is misplaced because, unlike here, the company failed to reveal a civil investigative demand *at all* "until nearly a year after it was served." 95 F. Supp. 3d 711, 721 (S.D.N.Y. 2015). Unlike *BioScrip*, where the company concealed known facts, AstraZeneca promptly and voluntarily disclosed the existence of the ongoing Investigation. (Mot. 19.)

2

marketing practices." (Ex. A1 at 192-93.)  And AstraZeneca provided periodic updates

concerning the Investigation throughout the Class Period.  (Opp. 8-10; Comp. ¶¶ 63-64, 78, 113,

136.)

The Opposition contends that Defendants should have disclosed more about the ongoing

Investigation that allegedly came to light later.  (Opp. 12-14.)  But securities laws require no

such thing.  "[T]he mere reference to a topic does not require 'disclos[ure] [of] the entire corpus

of [the company's] knowledge' relating to it.'"  *Chen v. Missfresh Ltd.*, 701 F. Supp. 3d 236, 253

(S.D.N.Y. 2023) (quoting *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d

Cir. 2010)).[3]  "[T]he correct question is whether the [disclosures] misleadingly suggested that the

subsequently-identified deficiencies *did not exist*."  *Id.* at 254.  Nothing in the Company's

disclosures suggested the Investigation or subsequent alleged developments were *not* occurring.

Plaintiffs ignore well-settled caselaw that an issuer has no obligation to self-report

uncharged, unadjudicated wrongdoing, and that companies are permitted a reasonable amount of

time to investigate before a duty to disclose arises.  (Mot. 11-12.)  Plaintiffs further ignore black-

letter law that a company has no duty to update its disclosures while disclosed government

investigations remain ongoing.  (Mot. 12); *accord City of Pontiac Policemen's and Firemen's*

*Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (disclosure of government investigations

alone was neither misleading nor created duty to disclose more).  As Plaintiffs concede,

AstraZeneca consistently disclosed the risk of government investigations and disclosed the

Investigation before the Class Period.  (Compl. ¶ 30; Opp. 8.)

---

[3] Plaintiffs rely on *Meyer v. Jinkosolar Holdings Company* for the proposition that "[a] generic warning of a risk will not suffice."  761 F.3d 245, 251 (2d Cir. 2014).  But that case involved a company disclosing a risk of environmental violations while "fail[ing] to disclose then-ongoing and serious pollution violations," *id.*, unlike here, where AstraZeneca *actually disclosed* the ongoing Investigation and provided periodic updates about it (Comp. ¶¶ 63-64, 78, 113, 136).

**B.** **AstraZeneca's Accurate Tagrisso Sales Reporting Is Inactionable**

Plaintiffs concede that AstraZeneca's Tagrisso revenue was accurately reported, but claim that these reports were nonetheless misleading because they did not affirmatively mention the Tagrisso fraud. But Plaintiffs do not address—much less refute—controlling caselaw holding that "accurately reported financial statements do not automatically become misleading by virtue of the company's nondisclosure of suspected misconduct." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 98-99 (2d Cir. 2021).

The two cases Plaintiffs cite are consistent with this well-settled principle. (Opp. 14.) Neither held accurately reported financials were misleading. Instead, both concerned statements describing revenue as *primarily* driven by *specifically identified* legitimate sources, when that revenue was substantially driven by misconduct. *See In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 536-37 (S.D.N.Y. 2016) (statement describing revenue as driven by portfolio managers' "investment performance" misleading where revenue was fabricated); *In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 401 (S.D.N.Y. 2005) (statement attributing revenue to "trading volumes and price volatility" misleading where revenue was substantially driven by illegal proprietary trading). In contrast, AstraZeneca's generalized statement that its results were due in part to "increased patient access for Tagrisso" (Opp. 14; Compl. ¶ 76) was accurate and did not require an explanation of potential wrongdoing that may have minimally increased access. *See, e.g.*, *In re Draftkings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 172 (S.D.N.Y. 2023) (statement that revenue derived from "other regions" and "new customers" did *not* "oblige" defendant to elaborate on, for example, "the allocation of that revenue to non-black-market, versus black-market, jurisdictions"); *N.Y.C. Public Pension Funds v. Coupang, Inc.*, 2025 WL 2613650, at *15 (S.D.N.Y. Sept. 10, 2025) (Broderick, J.)

4

(statements not misleading because "Complaint [did] not plead that the [anticompetitive conduct] had a significant impact on … sales").

## C.     The Complaint Alleges No False Statement Regarding the Investigation

AstraZeneca promptly disclosed the Investigation in January 2022.  (Ex. F.)  Plaintiffs nonetheless argue that four of Defendants' subsequent statements were false or misleading. (Opp. 8-10.)  But when read in their entirety, Plaintiffs have not pled anything misleading about these statements, particularly under Rule 9(b)'s and the PSLRA's heightened pleading standards. (Mot. 13-16.)

*First*, the Opposition takes Wang's remarks during a February 2022 conference call out of context to argue that he stated the Investigation was only an "individual case."  (Opp. 9.)  But, during that same call, Wang made clear that multiple individuals were impacted (Compl. ¶ 64 ("the number of people involved is also very limited")), and conveyed that the case's scope was uncertain and could change:  "[W]e don't know because [the] investigation is ongoing."  (*Id.*)

*Second*, Wang's remarks during an April 2022 conference call—that the Shenzhen case was "limited to the individual's [sic] behavior," and that the Company "always ha[s] a very high standard on compliance[] and definitely forbid[s] illegal behavior"—were not false.  (Compl. ¶ 78.)  In its proper context, the statement about individuals is entirely consistent with the Complaint's allegations that "more than 10 *sales representatives*" and one manager—*i.e.*, individuals—had been detained at that time.  (*Id.* ¶ 29 (emphasis added).)  At worst, Wang's comments regarding compliance are generalized statements of optimism, which are inactionable. (Mot. 14.)  Plaintiffs identify no case suggesting otherwise.

*Third*, Plaintiffs identify Fredrickson's November 2023 statement that China's "anticorruption campaign" in Q3 2023 had caused "some market impact" on AstraZeneca, but do not explain how this statement was misleading.  (Opp. 9-10.)  Plaintiffs' argument that

5

Fredrickson portrayed the issue as "generic industry headwinds" fails, given the Investigation was disclosed *by AstraZeneca* in January 2022 and regularly discussed with analysts thereafter. *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *31 (S.D.N.Y. Sept. 28, 2012).

*Finally*, Plaintiffs raise Soriot's September 2024 statement that "a small number, eight, nine employees [] were affected by this investigation." (Opp. 10.)  As explained in the Motion, neither Soriot nor the TV host interviewing him specified whether they were even discussing the Investigation.  (Mot. 15.)  Plaintiffs concede this by failing to address it in their Opposition.  *See Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) (Broderick, J.) ("[F]ailure to address an issue … raised by its adversary amounts to a concession or waiver of the argument.").

## II.    The Complaint Fails to Plead Materiality

Even assuming the Complaint identified a misleading statement—which it did not— Plaintiffs fail to plead with specificity that any of those statements were *materially* misleading.

*First*, Plaintiffs concede that the allegedly misleading statements were not quantitatively material.  According to the Complaint, the alleged proceeds of the Tagrisso fraud constituted $1.7 million (USD), or 0.002%, of AstraZeneca's revenue.  (Mot. 16; Ex. E1 at 145.)  This falls far short of the presumptive 5% threshold for quantitative materiality.

*Second*, the Opposition relies heavily on the assertion that the Tagrisso fraud as a whole was *qualitatively* material.  But this assertion is doubly wrong.  First, the question is not whether the disclosed Tagrisso fraud or Investigation was material, but "whether the *difference* between the [] information that was disclosed and the greater information that plaintiffs claim should have been disclosed is material." *Press v. Quick & Reilly, Inc.*, 218 F.3d 121, 130 (2d Cir. 2000).  The difference in this case relates to details about the ongoing Investigation (e.g., number of employees involved and geographic scope)—none of which fundamentally changed what

6

investors already knew about the Investigation: that AstraZeneca China employees were under investigation for Tagrisso-related fraud.

Plaintiffs' reliance on *Indiana Public Retirement System v. SAIC, Inc.*, 818 F.3d 85, 89 (2d Cir. 2016) is similarly misplaced. In *SAIC*, the misconduct was not disclosed until *after* federal charges were brought. *Id.* at 89-90. The issue was therefore whether nondisclosure of the alleged fraud was *itself* material, *id.* at 95-96—not whether incremental details concerning an investigation were material, which is the issue here. And Plaintiffs are wrong that the quantitative materiality threshold was not met in *SAIC* (Opp. 16), as the alleged misconduct represented *20%* of SAIC's annual revenues, *SAIC*, 818 F.3d at 96.

Moreover, the relevant qualitative factors do not remotely establish materiality here, and Plaintiffs fail to address the qualitative factors identified in the Motion that weigh *against* materiality. (Mot. 16-17.)

Plaintiffs make the unsupported assertion that Tagrisso sales were responsible for "over 40% of China revenue" during the Class Period. (Opp. 16.) But even if that percentage were correct—which it is not[4]—it is irrelevant given the purported fraud constituted only 0.002% of total revenues. (Mot. 16 (cases holding 0.4% and 0.3% of revenues immaterial as a matter of law).) Plaintiffs also contend that the Tagrisso fraud was material because China was "AstraZeneca's second-largest market globally." (Opp. 16.) But a fraud does not become material simply because it relates to a large revenue source. *See, e.g.*, *ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 203-04 (2d Cir. 2009) (rejecting materiality related to "single largest client"). Plaintiffs' argument that materiality is

---

[4] Assuming AstraZeneca's total Tagrisso revenue of $1.755 billion in 2024 in *all* 70 Emerging Markets (*see* Reply Ex. K at 160) were *entirely* attributable to China, this would still constitute only 27.4% of AstraZeneca's China revenue (*id.* at 40).

7

satisfied because Wang was "one of AstraZeneca's most visible executives" and was "ensnared" in the investigation (Opp. 16-17) fails for the same reason.

Plaintiffs also point to a drop in the Company's share price in 2024 after the alleged corrective disclosures. (*Id.* 17.) But the Second Circuit has rejected market reaction as a means of pleading materiality because it "is too blunt an instrument." *ECA*, 553 F.3d at 205.[5] Regardless, the corrective disclosures have no connection to the alleged misstatements. (Point IV, *infra.*)

### III.    The Complaint Fails to Plead a Strong Inference of Scienter

Plaintiffs' failure to plead a strong inference that *any* Defendant knew that their statements were false when made provides an independent basis for dismissal. (Mot. 17-25.)

Plaintiffs concede that AstraZeneca promptly and voluntarily reported the Tagrisso fraud to Chinese authorities, which it disclosed to investors. (Ex. F; Compl. ¶ 30.) This is wholly inconsistent with *any* inference of fraud: Why would Defendants have disclosed the fraud if they wished to mislead investors about it? Plaintiffs' theory that Defendants should have disclosed incremental details (which fails, as explained above) at most suggests that Defendants simply disclosed too little while facing a complex disclosure decision. *Kalnit v. Eichler*, 264 F.3d 131, 143 (2d Cir. 2001) (no inference of scienter from failure to disclose where duty to say more "was not so clear" given public's awareness following company's prior announcement). Because these nonculpable inferences are far stronger than any inference to mislead, the Complaint should be dismissed for failure to plead scienter. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007).

---

[5] Plaintiffs' lone citation—*Oklahoma Firefighters Pension & Retirement System. v. Lexmark International, Inc.*—simply recites the standard definition of materiality. 367 F. Supp. 3d 16, 30 (S.D.N.Y. 2019).

Nor have Plaintiffs alleged facts that would give rise to a strong inference of scienter. Plaintiffs effectively acknowledge their scienter allegations rise or fall on the steep burden to plead conscious misbehavior or recklessness.  (*See* Opp. 22 n.11.)

The Opposition argues Defendants had scienter because, based on their corporate positions, they "*could* have accessed" information about the Tagrisso fraud, and "must have known" about it because Tagrisso sales in China were "core" to AstraZeneca's business.  (Opp. 3, 18, 22-23.)  But "generalized allegations founded solely on an individuals' corporate position are not sufficient to demonstrate scienter." *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, 2014 WL 4832321, at *20 (S.D.N.Y. Sept. 29, 2014).

Plaintiffs' attempt to rely on *In re Estee Lauder Co., Inc. Securities Litigation*, 2025 WL 965686, at *9 (S.D.N.Y. Mar. 31, 2025), fails.  There, the court explained that, "[w]here plaintiffs contend defendants had access to contrary facts, they must *specifically* identify the reports or statements containing this information." *Id.* (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)).   Plaintiffs have not done so here.

Plaintiffs' conclusory allegation that Wang "was aware of the abnormally high positive rate and encouraged the first-line drug representatives to increase the positive rate" (Comp. ¶ 25) is similarly insufficient. *See Gross v. AT&T Inc.*, 2021 WL 9803956, at *9 (S.D.N.Y. Sept. 27, 2021) ("Pushing representatives to sell does not, on its own and without more, suggest that [an executive] was encouraging or was aware of widespread fraud.").  And Plaintiffs fail to allege how Wang's detention in 2024 suggests that he knew more about the Tagrisso fraud when he made the alleged misstatements.

Plaintiffs' attempt to plead scienter based on Defendants' "deliberate illegal behavior"— including allegedly "misleadingly highlight[ing] Tagrisso demand and growth drivers in China"

9

and "fail[ing] to reveal the existing and expanding criminal investigation" (Opp. 19-20)—also fails.  Scienter cannot be pled by regurgitating allegations of purported misstatements.

Plaintiffs vaguely reference purported "destruction of evidence," "[n]ationwide deletion of WeChat groups," "[r]elaxation of strict testing requirements," and "[m]andatory legal department interviews" led by "senior executives" and "[s]enior managers" (Opp. 4-5; Comp. ¶ 31), but fail to allege that *any* Defendant was aware of or involved in that conduct—much less with particularity.  (*See* Mot. 20); *see also Coupang*, 2025 WL 2613650, at \*29 (Broderick, J.) ("[v]aguely pleading that 'senior executives' 'attended' meetings where some of the challenged practices were discussed is insufficiently particular to satisfy the PSLRA").

Similarly, Plaintiffs' generic allegations of "systemic corporate wrongdoing, a toxic sales culture, … corporate-wide flouting of compliance," and "personnel changes" (Opp. 23) fail to support scienter.  *See, e.g.*, *Sfiraiala v. Deutsche Bank Aktiengesellschaft*, 729 Fed. App'x 55, 58 (2d Cir. 2018) (no scienter where plaintiffs alleged "culture of greed and corruption").  The three cases on which Plaintiffs rely are inapposite because each involved *specific* allegations that individual defendants were involved in the misconduct.  *See Gimpel v. Hain Celestial Grp.*, 156 F. 4th 121, 147-48 (2d Cir. 2025) (defendants, *inter alia*, "received weekly reports" on misconduct); *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, 320 (S.D.N.Y. 2024) (defendants reviewed internal information inconsistent with their public statements); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 482 (S.D.N.Y. 2006) (senior executives "personally directed" relevant conduct).

Plaintiffs also assert that Sarin's November 2024 statements about developments in the Investigation suggest she knew more about the alleged conduct earlier in time.  (Opp. 21.)  But

10

nothing about her statements remotely suggests this when read completely and in context. (Ex. H.)

Finally, Plaintiffs invoke the "core operations" doctrine, but ignore that the Second Circuit has repeatedly declined to endorse that doctrine (Mot. 25), which can—at most—be part of a "holistic assessment of the scienter allegations," *Cheng v. Can. Goose Holdings*, 2021 WL 3077469, at *10 (S.D.N.Y. July 19, 2021) (Broderick, J.). Even if the doctrine could be invoked, the revenue in China associated with the Tagrisso fraud represents a miniscule fraction of AstraZeneca's revenue and is therefore nowhere near a "core operation." (Mot. 25-26.)

Plaintiffs' conclusory argument that Wang and the other individual defendants must have known about the Tagrisso fraud because they were "at the center of day-to-day operations" in China (Opp. 18) has been repeatedly rejected by courts (Mot. 25-26). Plaintiffs offer *zero* explanation as to how executives of a company with 83,500 employees, including 16,500 employees in China, with operations in over 130 countries (Ex. A1 at 12, 47), would have known about the day-to-day operations of 100 employees in China related to a single product.[6]

## IV.    The Complaint Fails to Plead Loss Causation

The Complaint must independently be dismissed for failing to plead loss causation. As explained in the Motion, the alleged corrective disclosures have no connection to the alleged misstatements, did not disclose new information, or both. (Mot. 26-28.)

The Opposition does not explain how the October 30, 2024 announcement that Wang was "cooperating with an ongoing investigation by Chinese authorities" (Opp. 25) "corrected" any

---

[6] Contrary to Plaintiffs' assertion (Opp. 23-34), while confidential witnesses need not be identified *by name*, a complaint must provide "other facts" to satisfy the particularity requirement for anonymous sources. *See In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 478-79 (S.D.N.Y. 2004).

alleged misstatement or why that information was previously unknown to investors, who were informed in January 2022 that AstraZeneca was "fully cooperat[ing] with authorities" (Mot. 27).

Likewise, nothing in the November 5, 2024 Yicai Global report stating that the Investigation "implicated dozens of senior executives" (Opp. 25) provided any new information that "corrected" any prior statement by Defendants (Mot. 28).

Finally, Plaintiffs assert that Sarin's November 6, 2024 statement that "around a hundred individual ex-employees have been sentenced" constituted a "corrective" disclosure.  (Opp. 25.)  But this information was also not new.  Indeed, Sarin specified that the information discussed was "gathered from public sources."  (Ex. H at 4.)  Nor can a subsequent disclosure render a prior disclosure misleading, absent "facts that tend to establish that the statements were false when made."  *Pehlivanian v. China Gerui Adv. Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 647 n.6 (S.D.N.Y. 2015); *Missfresh*, 701 F. Supp. 3d at 254 ("The correct question is whether the [disclosures] misleadingly suggested that the subsequently-identified deficiencies *did not exist*[.])".

## V.       Plaintiffs' Control Person Claims Fail

Given Plaintiffs' failure to plead a Section 10(b) claim, Plaintiffs' control person claims likewise fail.  (Mot. 28.)

**CONCLUSION**

Defendants respectfully request that the Complaint be dismissed with prejudice.

Dated:  January 22, 2026           Respectfully submitted,

*/s/ Edmund Polubinski*

Edmund Polubinski

**DAVIS POLK & WARDWELL LLP**
Charles Duggan
Edmund Polubinski
Corey M. Meyer
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
charles.duggan@davispolk.com
edmund.polubinski@davispolk.com
corey.meyer@davispolk.com

Mari Grace
1050 17th Street, NW
Washington, DC 20036
Telephone: (202) 962-7000
mari.grace@davispolk.com

Jonathan K. Chang
900 Middlefield Road, Suite 200
Redwood City, CA 94063
Tel.: (650) 752-2000
jonathan.chang@davispolk.com

*Attorneys for Defendants AstraZeneca PLC,*
*Pascal Soriot, Aradhana Sarin, and*
*David Fredrickson*

13

14

## <u>CERTIFICATION OF WORD-COUNT COMPLIANCE</u>

I hereby certify that the foregoing Memorandum of Law complies with the word limit set forth in Local Civil Rule 7.1(c) and Rule 4(b) of the Individual Rules & Practices in Civil Cases of the Honorable Vernon S. Broderick.  The word count, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, is 3,498 according to the word-processing system used to prepare the document.

*/s/ Edmund Polubinski*
Edmund Polubinski